[No. 31778. Department One. December 13, 1951.]

*In the Matter of the Nontestamentary Trust Established by*
JAMES W. PARKS *et al.*
SEATTLE-FIRST NATIONAL BANK, *as Trustee, Respondent,* v.
WILSON J. PARKS *et al., Appellants.*[1]

[1]Reported in 238 P. (2d) 1205.

*Kennett, McCutcheon & Soderland,* for appellants.

*Wright, Innis, Simon & Todd,* for respondent.

DONWORTH, J.—This is an appeal from an order approving a corporate trustee's final report and account and supplemental final report and account and discharging it from further liability for all acts or omissions fully and accurately described in these accounts.

The trust involved herein is a nontestamentary, "spendthrift" trust established in 1941 by James W. Parks and Cora B. Parks, his wife, for the benefit of Wilson J. Parks (one of their three sons) and for the benefit of his children. In 1941 Wilson J. Parks had only one child, Elizabeth Parks, who is now of legal age. Subsequent to the establishment of the trust another child, Wilson J. Parks, Jr., was born. The beneficial interest is divided seventy-five percent to Wilson J. Parks and twenty-five percent to his children as a class which presently consists of Elizabeth Parks and Wilson J. Parks, Jr.

The original trustee was James W. Parks. Upon his death in 1946 Cora B. Parks became trustee. She resigned in December, 1947, in order to avoid certain income tax problems. Her son Harold M. Parks was designated in the trust instrument as her successor trustee. However, he declined to serve as trustee and, at the suggestion of Wilson J. Parks, the plaintiff, Seattle-First National Bank, was appointed trustee by the court.

The plaintiff acted in this capacity from December 30, 1947, until October 6, 1949, when it petitioned the court for leave to resign and for the appointment of a successor trustee.

After a hearing lasting two and a half days, at which all parties were represented by their respective counsel, the trial court on April 21, 1950, entered an order accepting the

resignation of plaintiff as trustee and appointing a successor trustee. However, by the terms of that order compensation to plaintiff and discharge from liability were made contingent upon approval by the court of plaintiff's final report and account.

On May 4, 1950, plaintiff filed its final report and account. A hearing was had thereon at which all parties were represented, including the successor trustee, and on June 23, 1950, the court entered an order requiring plaintiff to file an amended or supplemental final report and account within thirty-one days of the entry of judgment in a certain declaratory judgment suit then pending involving these same parties. Judgment in the declaratory judgment action was filed on July 25, 1950.

Plaintiff duly filed its supplemental final report and account on August 25, 1950. In accordance with the order of June 23, 1950, defendant Wilson J. Parks made written objections and exceptions to plaintiff's supplemental final report and account. No other party filed written objections thereto.

After a hearing of two days duration, at which these objections were fully considered, the trial court entered its order of February 9, 1951, approving the final report and account and supplemental final report and account, discharging plaintiff from further liability for all acts or omissions fully and accurately described in the said accounts and awarding additional and final compensation to plaintiff and plaintiff's attorneys. This appeal is taken from the first four paragraphs of that order.

The only appellants are Wilson J. Parks and his daughter, Elizabeth Parks. Wilson J. Parks, Jr., was represented at all the hearings by his guardian *ad litem,* who offered no objection to the bank's being discharged as trustee and consequently did not join in the appeal.

Appellants state their assignments of error as follows:

"1. The trial court erred in approving the final report and accounting and supplemental final report and accounting of respondent as trustee.

"2. The trial court erred in relieving and discharging respondent as trustee 'of and from all further liability for all of its acts and omissions which are fully and accurately described in said accounts.'

"3. The trial court erred in allowing to respondent and to respondent's attorneys additional compensation for its services in setting up the supplemental final report and accounting in a manner contrary to the provisions of the order of the Superior Court entered in Cause No. 402727 [the declaratory judgment action]."

The settlors of the trust, James W. Parks and Cora B. Parks, were the owners of a number of enterprises engaged in the salmon canning business. They had three sons, Wilson J. Parks, James E. Parks and Harold M. Parks. In 1941, they established the trust involved in this proceeding and a similar trust for the benefit of James E. Parks and his children. Harold M. Parks received an outright interest in the family businesses.

The assets of the trust consist, outside of government bonds, of twenty-five shares, constituting five percent of the outstanding stock of the Western Fisheries Company, two hundred twenty-five shares, constituting fifteen percent of the outstanding stock of the Parks Canning Company, Inc., and a one-fourth interest in C. B. Parks & Sons, a partnership. Thus the trust assets, which are currently valued at approximately $250,000, primarily consist of minority interests in family businesses. The two corporations and the partnership in which the trust has these minority interests are interlocked in ownership and management with several other family enterprises. All of these enterprises are managed by Harold M. Parks, who also owns an interest in them.

Appellants' principal argument in support of their position that the trial court erred in approving respondent's final reports and discharging it from further liability may be summarized as follows: Harold M. Parks manages and partially owns all of the family enterprises, both those in which the trust has interests and those in which it has none. The various enterprises are closely interrelated.

Marked hostility exists on the part of Wilson J. Parks toward Harold M. Parks, of which respondent has, at all times pertinent hereto, been aware. Nevertheless, respondent made no inquiry as to the earnings of the interrelated companies in which the trust had no interest and made no effort to determine whether expenses were properly allocated to the various companies.

Appellants in their brief state their position to be:

"Appellants have not taken the position and have not endeavored to prove that the trust was *in fact* receiving unfair treatment at the hands of the management of these family ventures. Appellants have claimed throughout these proceedings that the set-up of the companies provided an obvious *opportunity* for the management thereof to favor their own interests at the expense of the trust, and that the final report of the trustee, showing that it *made no inquiry* to determine whether the trust received all the money it was entitled to, shows a lack of due diligence on the part of this corporate trustee."

We have defined a trustee's duty of care, skill and diligence to be that degree of care, skill and diligence that would be exercised by an ordinary prudent man engaged in similar affairs.

In *Monroe v. Winn*, 16 Wn. (2d) 497, 133 P. (2d) 952, we said:

"In administering the trust, the trustee must exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property and, in meeting this standard, the circumstances as they reasonably appear to him at the time of doing an act, and not at some subsequent time when his conduct is called in question, should be considered. The trustee owes to the beneficiaries of the trust the highest degree of good faith, diligence, fidelity, loyalty, and integrity, and the duty to deal fairly and justly with them and solely in their interests. The text books and the cases are so replete with declarations of the foregoing rules that we deem citation of authority unnecessary."

This definition is in accord with the weight of authority. 3 Bogart, The Law of Trusts and Trustees, 354, § 541.

The legislature in 1947 adopted "the prudent man rule" in respect to fiduciaries.

Rem. Supp. 1947, § 3255-10b, provides:

"In acquiring, investing, reinvesting, exchanging, selling and managing property for the benefit of another, a fiduciary shall exercise the judgment and care under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital. Within the limitations of the foregoing standard, and subject to any express provisions or limitations contained in any particular trust instrument, a fiduciary is authorized to acquire and retain every kind of property, real, personal or mixed, and every kind of investment, specifically including but not by way of limitation, debentures and other corporate obligations, and stocks, preferred or common, which men of prudence, discretion and intelligence acquire for their own account."

Since this statute prescribes substantially the same standard of care for fiduciaries as has been established by our decisions, it is not necessary to decide whether the scope of this statute is such that it is directly applicable to the facts of this case.

The question presented by the first two assignments of error is whether the trial court erred in approving respondent's final accounts and in relieving it from further liability as to matters fully and accurately described therein. The answer to this question depends on whether respondent, in the management of this trust, has complied with the standard stated in the authorities above referred to.

We do not deem it necessary to set out in detail all of appellant's written objections with respect to respondent's administration of the trust nor to detail respondent's trust officer's testimony in answer to the objections. Appellants presented no testimony in support of their objections.

As previously stated, the gravamen of the objections is that respondent failed to investigate the management and interrelationships of those family businesses in which the trust had interests and those in which it had none. Appellants assert that it was the duty of respondent to make a

detailed investigation of the management of all the family ventures so as to ascertain and indicate in its final report and account whether the ventures in which the trust was interested were receiving a fair share of the income or whether income, properly receivable by those ventures, was being siphoned off by the other ventures through improper allocation of expenses and improper use of equipment.

In administering the trust, respondent relied on audits of the businesses in which the trust had a proprietary interest. The trust officer of respondent bank testified that these audits were prepared by a reputable firm of certified public accountants and were of the type known as "spot check" audits. They were not detailed audits of the operation of the businesses in which the accountant certifies that he has examined every single transaction appearing on the company's books of account. He also testified that the "spot check" type of audit is the type commonly used for most business purposes and that detailed audits are very rare. It was his opinion that the cost to the trust of detailed audits would have been many thousands of dollars, so high as to be prohibitive considering that the trust owned minority interests only. The audits relied upon by respondent were of the same type and prepared by the same firm of certified public accountants as those that had been relied on by James W. Parks and Cora B. Parks, the settlors of the trust, during their respective tenures as trustee.

The trust officer testified that there was nothing in the "spot check" audits which would arouse any suspicion of mismanagement or unfair treatment in respect to the businesses in which the trust had interests. He further testified that Harold M. Parks was a competent manager and that, on the basis of the admittedly limited investigation made by the witness into the interrelationships of the ventures, it appeared to him that Mr. Parks had "leaned over backwards" in according fair treatment to the businesses in which the trust was interested.

It is undisputed that, at the commencement of the three-year period encompassing respondent's stewardship of the trust, the total book value of the trust's interests in the

businesses was $81,000 and that during that period the businesses earned *for the trust,* after corporate taxes, $167,000. The total cost of management to the trust during that period was only $6,000, or 3½ percent of the total income, which the trust officer considered to be very reasonable. It was his opinion that the ratio of earnings to capital and the low cost of management indicated excellent management.

The trust officer acknowledged that Wilson J. Parks was desirous of obtaining more detailed information as to the management of the businesses, particularly information as to Harold M. Parks' income from the businesses. However, he testified on cross-examination that there was considerable ill will on the part of Wilson J. Parks toward his brother. This fact is corroborated by statements in appellant's brief. The trust officer further testified that he felt that Wilson J. Parks' motive was a desire to harass his brother, under whose management the businesses had earned an exceptionally good return for the trust.

Decisions in cases of this type must rest entirely on the facts of each particular case. What might be patent neglect of duty in one case may be entirely reasonable in another.

Under all the circumstances shown by the evidence, it is our opinion that respondent in administering this trust exercised such care, skill and diligence as an ordinary prudent man would exercise in dealing with his own property. Considering the absence of indications of unfair management resulting from respondent's limited inquiries into the businesses in which the trust had no interest, the trust officer's high regard for Harold M. Parks as a business man, the fact that respondent relied on audits of the same type prepared by the same firm of certified public accountants as were relied upon by the predecessor trustees who were the settlors of the trust, that the trust received exceptionally large earnings for the amount of its assets, that the cost of management was very low and that the trust's interest in each of the businesses was a minority interest, it appears to us wholly reasonable that the trustee made no further investigation than it did.

It must be borne in mind that the discharge from liability granted respondent by the order appealed from is limited in that respondent is discharged from further liability only for "acts and omissions which are fully and accurately described in said accounts."

Appellants further argue that respondent should not have been discharged from liability because it did not file in the superior court an inventory or intermediate accounts, as required by the Uniform Trustee's Accounting Act, Rem. Supp. 1941, § 11548-1 through § 11548-28, as amended by Rem. Supp. 1943, § 11548-27 [P.P.C. § 988-53]. Respondent takes the position that the act does not apply to this trust, the trust having been executed prior to the effective date of the act.

Rem. Supp. 1943, § 11548-27, provides:

"This act shall apply only to testamentary trusts created by wills executed after June 11, 1941, and to non-testamentary trusts created after June 11, 1941."

The trust instrument creating this trust is dated January 21, 1941, several months before the effective date of the act. However, appellants point out that the body of the instrument contains the following clause:

"The Grantors herein expressly provide that the named individual trustees, and each and all of them, shall be relieved from any and all of the duties which would otherwise be placed upon any of them by the provisions of Chapter 229 of the Session Laws of the State of Washington for the year 1941, known as the Uniform Trustee's Accounting Act."

It is appellants' contention that the language of the above quoted clause should have put respondent on notice that the trust, notwithstanding the date appearing thereon, was actually executed after the effective date of the act.

Unquestionably, the trust instrument could not have been executed in its present form on January 21, 1941, since it contains an accurate citation to the Uniform Trustee's Accounting Act, which did not become law until signed by the governor on March 25, 1941. The draftsman of the instrument testified that he thought it was drafted after June 11, 1941, because of the reference to the act and because it gave

effect to a certain stock dividend declared in November, 1941, but he had no independent recollection as to when it was drafted. He testified that the words "21st" and "January" in the first line of the trust agreement were in his own handwriting.

Regardless of the date of the execution of the instrument in its present form, it appears, from the report of a certified public accountant, dated May 14, 1945, which was admitted in evidence, that the stocks were transferred to the original trustee on January 21, 1941, and the first entries in the books of account were made on that date. This report states in part:

"In answer to the request of your client for an outline of what the Trust has done since its inception, how it has handled its funds and its present net worth, I present the following information:

"1. The Trust began January 21, 1941, when 25 shares of stock of the Western Fisheries Company and 36 shares of stock of the Parks Canning Company were turned over to it and the following entry made on the books:

"Western Fisheries Stock—25 shares 2,500.00
 Parks Canning Company Stock—36 shares 3,600.00
 Wilson J. Parks—75% interest 4,575.00
 Elizabeth Parks—25% interest 1,525.00

The above is the only gift made by Mr. J. W. Parks for the benefit of this Trust. All subsequent transactions and increases in values flow from this initial gift."

■ However, assuming *arguendo* that the Uniform Trustee's Accounting Act does apply to this trust, the trial court (which apparently assumed that the act applied) was not in error in discharging respondent from further liability.

Rem. Supp. 1941 §§ 11548-2, -3, require the trustee to file an inventory and yearly intermediate reports.

Rem. Supp. 1941, § 11548-19, provides:

"When a Trustee fails to perform any of the duties imposed upon him by this act he may be removed, his compensation may be reduced or forfeited, or other civil penalty inflicted, *in the discretion of the Court.*" (Italics ours.)

The record does not disclose that appellants, prior to respondent's resignation, ever objected to respondent's failure

to file an inventory or intermediate reports during its stewardship of the trust. Appellants did not include such an objection among their written objections and exceptions to respondent's final reports and accounts. They do not suggest that they are in any way now prejudiced by the absence of intermediate reports. No changes were ever made in the portfolio of the trust during respondent's tenure as trustee. Under these circumstances, we cannot hold that the trial court abused its discretion in not imposing a penalty on respondent.

Appellants' final assignment of error is that the trial court erred in awarding additional and final compensation to respondent and its attorneys. Appellants assert that the additional and final compensation was allowed primarily for the preparation of the supplemental final report and account. According to the trust officer, most of the work involved in making that report and account was expended in computing an allocation of income between Elizabeth Parks and Wilson J. Parks, Jr. Appellants insist that, because of the rendition of the declaratory judgment determining that the rights of the children of Wilson J. Parks were to be considered together as a class, such an allocation was entirely unnecessary and therefore no compensation should have been allowed respondent for preparing it.

The declaratory judgment was entered July 25, 1950. It provided, in substance, that the income accrued with respect to the children's twenty-five percent interest in the trust vested only in the children of Wilson J. Parks as a class and no portion thereof vested in any individual in the class. At the hearing on respondent's final report and account on May 26, 1950, prior to the entry of the declaratory judgment, appellants demanded that respondent make a supplemental report and account containing such an allocation of income between the children.

On June 23, 1950, the trial court entered an order directing respondent to file a supplemental report and final account within thirty-one days after the entry of the declaratory judgment unless an appeal were taken. Although

it does not appear in the formal order, at the hearing in reference to the making of the order the trial court stated:

"I am assuming that case [the declaratory judgment action] is not appealed. Then the bank would be in a position to give its accounting, at least, *on the formula decided by the court*, and the bank at that time could then attach these documents that I have ordered attached." (Italics ours.)

It thus appears that the trial court made it clear that it was contemplated that respondent's supplemental final report and account would be made in accordance with what was made necessary by the declaratory judgment.

In the light of the declaratory judgment, it was unnecessary for respondent to allocate the income of the individual children of Wilson J. Parks. Since that portion of the work was not necessary, it follows that respondent is not entitled to be compensated for it.

For the foregoing reasons, we affirm all portions of the order appealed from except paragraph 3 thereof (wherein additional and final compensation is awarded to respondent) which is hereby modified by eliminating therefrom that portion beginning with the words "the sum of Five Hundred Dollars ($500.00)" to the end thereof. The cause is remanded for the purpose of revising the amount of respondent's additional and final compensation in accordance with the views expressed herein. For this purpose, the trial court may, in its discretion, hear additional testimony.

Neither party shall recover costs in this court.

SCHWELLENBACH, C. J., MALLERY, GRADY, and WEAVER, JJ., concur.