Argued December 3, reversed December 31, 1959

ROWE *v.* ROWE ET AL

347 P. 2d 968

*McDannell Brown,* Portland, argued the cause for appellants. With him on the brief was Thomas G. Greene, Portland.

*Harry G. Spencer,* Portland, argued the cause for respondent. With him on the brief were Klosterman, Schouboe & Joachims, Portland.

Before McAllister, Chief Justice, and Rossman, O'Connell and Redding, Justices.

O'CONNELL, J.

This is a suit for a declaratory decree in which plaintiff prays for the construction of the provisions of two similar testamentary trusts under each of which he was named as one of the life beneficiaries. The de-

fendant, Wilbur G. Rowe, was named as trustee. The other defendants are the remaindermen named in the trust. The defendants appeal from a decree construing the trust favorably to the plaintiff.

The trusts were created in the separate wills of Enoch J. Peterson and Nellie R. Peterson, husband and wife. Each of the wills contained the following provision (combined in the excerpt below for convenience):

"THIRD: But, if my said wife [husband] should predecease me, then and in that event, I hereby give, bequeath and devise all of said rest, residue and remainder of my said estate unto her [my] cousin, Wilbur G. Rowe of Portland, Oregon; now the approximate age of forty-two (42) years, in trust nevertheless for the use and benefit of her [my] parents, George H. Rowe, now of the approximate age of seventy-four (74) years, and Katharine B. Rowe, now the approximate age of seventy-five (75) years, both of whom now reside at Glendale, Los Angeles County, California, providing, however, either and/or both of her [my] said parents should survive me, and for so long as either should survive. I hereby direct that my said Trustee hereunder shall have power to sell, mortgage, invest, re-invest, and otherwise convert and/or dispose of any or all of the assets of said trust estate, and to pay to and for the use and benefit of said two (2) trust beneficiaries and/or the survivor of them any or all rent, income and profits therefrom and any or all of the principal or corpus thereof entirely according to his own judgment and discretion. And I hereby further direct that said trust shall terminate upon the death of the last surviving of my said wife's [my] said two (2) parents, and that my said Trustee shall thereupon pay over and deliver whatever may then remain and be on hand, if anything, in the corpus of said trust estate, unto such legatees and devisees then living as are hereinafter named and mentioned

in the FOURTH clause hereof and in such amounts or proportion and in such manner as therein specified, and to which legatees and devisees I thus hereby give, bequeath and devise what may then remain, if anything, in said trust estate."

The testator and testatrix were killed in a common disaster; and their wills were admitted to probate in Multnomah county on January 12, 1951. Pursuant to the terms of the trusts, the estates were distributed to Wilbur G. Rowe, the named trustee, after the claims and expenses of the administration of the estate had been paid. From the time that he received the trust assets until this suit was brought approximately $7,500 accrued to the trust as income. Of this amount $600 was distributed to the plaintiff and his wife. The trustee paid $100 to the life beneficiaries on February 11, 1952; $100 to them on October 22, 1952; $200 to them on April 16, 1954; nothing was paid in 1955; $200 was paid to plaintiff on June 6, 1956; and nothing was paid thereafter. Katharine B. Rowe died on July 19, 1954.

The decree of the lower court ordered that the defendant trustee pay to plaintiff all of the net income which he had accumulated under the trust and to continue to pay the net income to plaintiff as it accrued in the future. The trial court construed the trust as vesting in the trustee the discretion only to divide the income between the two life beneficiaries and not to withhold from such beneficiaries any of the income. In its written opinion the court indicated that if the trust was construed to give the trustee the discretion to withhold the income from the beneficiaries there would be grave doubts as to the validity of the provision because no standard was provided to guide the trustee in exercising such discretion.

We cannot agree with the lower court's construction

of the trust nor with the view that the trust provision is invalid for lack of a guiding standard.

 The provision in question was effective to create a discretionary trust. Such a trust may be created even though there is no *specific* standard to guide the trustee in exercising his authority. Stated differently, a settlor may create a valid trust which vests in the trustee the discretion to pay or apply only so much of the income or principal as the trustee sees fit. 2 Scott on Trusts (2d ed) §§ 128.3 and 155; 3 Bogert, Trusts and Trustees, § 560. The standard in such case is not a specific one, such as the beneficiaries' need, but is, rather, a general standard of reasonableness in exercising the discretion granted to him. The standard is stated in 2 Scott on Trusts, § 128.3, p 936 as follows:

> "* * * If the settlor manifested an intention that the discretion of the trustee should be uncontrolled, the court will not interfere unless he acts dishonestly or from an improper motive."

The court will not interfere if the trustee acts within "the bounds of a reasonable judgment." 2 Scott on Trusts, § 187, p 1375. What these bounds are will vary with the terms and purposes of the trust and the circumstances of each case. Although there are some cases which seem to express a contrary view, there would appear to be no reason why a settlor could not, if he wished, vest in the trustee the authority to dispose of, or withhold, the income of a trust upon the basis of the trustee's own judgment unrelated to any standard. There is no policy precluding a person from vesting in another the uncontrolled authority to dispose of the property of the donor of the power. This is evident from the fact that the law has long recognized that a general power of appointment

may be conferred upon a donee permitting him to dispose of the property to whomsoever he pleases and for reasons which are left entirely to his own choice. *In re Lidston's Estate,* 32 Wash2d 408, 202 P2d 259 (1949); 3 Restatement, Property, § 324; 2 Scott on Trusts (2d ed) §§ 122, 123; 2 Simes and Smith, The Law of Future Interests (2d ed) §§ 875, 894; cf. *In re Park,* 1 Ch 581 (1932), noted in 76 Sol J 488; 58 Harv L Rev 548 at 563. Although there are cases refusing to recognize a broad power of choice in the transferee where the attempted disposition does not contain all of the elements necessary to create a trust, the better view is that such a disposition is valid if it is sustainable as a power of appointment. Gray, The Rule Aganst Perpetuities (4th ed) § 909; 2 Scott on Trusts (2d ed) § 123; 2 Simes and Smith, The Law of Future Interests (2d ed) § 894.

There is an abundance of authority recognizing the proposition that the trustee may be given a discretion so broad that he may refuse to make a disposition of the trust property for reasons which he is pleased to withhold. The rule is stated in 2 Scott on Trusts, § 187.2, p 1388, as follows: "By the terms of the trust the requirement of reasonableness in the exercise of a discretionary power by the trustee may be dispensed with."

The control over the exercise of a broad power of that nature is described in 2 Scott on Trusts, § 187.2, pp 1388, 1389, as follows:

"* * * In such a case the exercise by the trustee of his discretion will not be interfered with by the court, even though he acts beyond the bounds of a reasonable judgment, if he acts in good faith and does not act capriciously.

"* * * * *

"Even though there is no standard by which

it can be judged whether the trustee is acting reasonably or not, or though by the terms of the trust he is not required to act reasonably, the court will interfere where he acts dishonestly or in bad faith, or where he acts from an improper motive."

■ If, then, we should construe the trust provision in the instant case as vesting in the trustee the power to pay to or withhold from the life beneficiaries the income or principal, the trust would, nevertheless, be valid.

We must decide, however, whether the language of the provision, read in light of the circumstances existing at the time of the creation of the trust, conferred upon the trustee a more restricted power.

■■ When the specific purpose or purposes of the settlor can be ascertained the trustee's choice of action, if it is to constitute a reasonable judgment, must be within the limits set by the settlor's purpose. The difficulty in many if not in most of these cases is finding the purpose of the settlor with sufficient definiteness to be helpful in marking out the limits beyond which the trustee should not be permitted to go in dealing with the trust property. The settlor's specific design in framing a discretionary trust is normally unexpressed or vaguely outlined. In looking outside of the terms of the trust itself the court is permitted to consider the circumstances attendant upon the creation of the trust in attempting to determine the scope of the trustee's powers, but frequently these circumstances are not particularly illuminating.

■ The instant case presents an example of this difficulty of finding the settlor's purpose in the creation of a particular trust. We receive no aid to construction from the language directing the trustee "to pay to and for the use and benefit" of the life benefi-

ciaries. This language is simply employed to complete the idea that the property transferred is to be held in trust, i.e., that the transferee holds the property "to the use of" and "for the benefit of" another rather than for his own use and benefit. *Frye v. Burk,* 57 Ohio App 99, 12 NE2d 152 (1936). The words "for the use and benefit" are not equivalent to the words "for the maintenance and support." *Huffman v. Chasteen,* 307 Ky 1, 209 SW2d 705 (1948).

As we have already stated, we do not regard the trust provision in question as conferring upon the trustee simply the authority to make an allocation of the income and principal between the two life beneficiaries. There is nothing in the terms of the trust or in the circumstances shown to have existed at the time of its creation which would support that conclusion. The life beneficiaries were husband and wife living together in harmony. There was no apparent reason for making an allocation between the beneficiaries and so we must assume that the discretion was not conferred upon the trustee for the purpose of making such an allocation.

We look then to the circumstances existing at the time of the execution of the trust for the settlors' purposes in creating it, from which purposes we may in turn define the trustee's powers.

The life beneficiaries were the parents and parents-in-law, respectively, of Nellie R. Peterson and Enoch J. Peterson, the settlors. The beneficiaries were the natural objects of Nellie's bounty; but not of Enoch Peterson's bounty. As the will recites, the life tenants were at an advanced age in life, one being 74 and the other 75 years of age. At the time of the death of the settlors the life beneficiaries owned property the total value of which was not made clear by the testimony,

but it was at least $24,000. There was no other evidence of the circumstances existing at the time of the making of the wills from which we might derive the trust purpose.

■ The trustee indicated in his testimony that he understood that he had the duty to pay income to the life beneficiaries in case of "need." He stated that he was guided in the exercise of his judgment by what was stated in the will and by what Enoch Peterson, one of the settlors, told him. Statements made by a testator at the time of the execution of his will generally are not admissible for the purpose of showing his intention with respect to the disposition of his property. *Miller v. Smith,* 179 Or 214, 170 P2d 583 (1946); *In re Holland's Estate,* 180 Or 1, 175 P2d 156 (1946); *Holohan v. McCarthy,* 130 Or 577, 281 P 178 (1929); *Soules v. Silver,* 118 Or 96, 245 P 1069 (1926); *Re Estate of Hodgkin,* 110 Or 381, 221 P 169, 223 P 738 (1923); cf., *Miller's Will,* 49 Or 452, 90 P 1002, 124 Am St Rep 1051, 14 Ann Cas 277 (1907). There is an exception where the evidence is necessary to aid in interpreting an equivocation. 9 Wigmore on Evidence (3d ed) § 2472; Page on Wills (Lifetime ed) §§ 1618, 1625; Thompson on Wills (3d ed) § 333. Since the scope of the trustee's power under the trust before us was not clear his declaration of purpose in vesting discretion in the trustee may have been admissible to resolve the uncertainty. However, it is not necessary for us to pass upon this question because no issue is made either on the ground that the testators' statements of intent were considered or on the ground that they were excluded from the evidence. Furthermore, both plaintiff and defendants have proceeded upon the assumption that trustee's power is limited to a determination of the needs of the life beneficiaries; it is assumed that the only question is whether the trustee

properly interpreted the meaning of "needs" by limiting payments to such small amounts and to the few instances mentioned. The trustee understood that he was to pay over income to the beneficiaries only if they were in need in the sense that they lacked the essential things in life or were substantially inconvenienced by the lack of money. As he interpreted his power and duty, need meant want in the strict sense. He testified that "I don't feel he [plaintiff] should have anything unless he needs it, unless he has used up what he has got on hand. I am supposed to look after him. He is not supposed to be in need. That is my understanding." With this as his guide he paid $200 to plaintiff to help him finance a trip to the middle west; he paid $100 to plaintiff's wife, Katharine, because she needed a hearing aid; other payments were apparently made on a similar basis. The trustee explains that he made such limited payments because the life beneficiaries were getting along fairly well with the income they were receiving from other sources.

Plaintiff testified that he had "about eight or ten thousand" dollars in cash; a pension of one hundred dollars a month; social security of $87.90; a little income from property and investments. Plaintiff owned his own home free of encumbrances; he also owned a television set, an automobile (which was later destroyed, however), a Wurlitzer organ, and other items of furniture and equipment. With respect to house furnishings plaintiff testified that he and his present wife had "everything we need."

There is no question of the trustee's good faith in making his decision to limit the payments as he did. The only question presented is the reasonableness of his judgment. It is quite possible that we would have been more liberal in our treatment of the life bene-

ficiaries had the power to decide been vested in us. But we have no right to substitute our judgment for that of the trustee. 3 Bogert, Trusts and Trustees, § 560; 2 Scott on Trusts, § 187. We are permitted to control the trustee only if we can say that no reasonable person vested with the power which was conferred upon the trustee in this case could have exercised that power in the manner in which it was exercised. We cannot say that the trustee's conduct in the instant case was unreasonable in this sense.

■ We hold, therefore, that the trustee is not required to pay over the accumulated income as ordered by the trial court, and that he may in the future continue to make or withhold payments to the plaintiff on the basis of the same criterion he has used previously in the administration of the trust.

It should be noted that the trust in question was created not only for the life beneficiaries but for the remaindermen as well. In vesting a broad discretion in the trustee it is possible that the settlors intended that the trustee should consider the needs of the remaindermen as well as the needs of the life beneficiaries. There is nothing in the record to show the needs of the remaindermen and as far as we know it is possible that there were such needs, that they were greater than those of the life beneficiaries, and that the trustee considered them in making his decision to limit the payments of income to the life beneficiaries. Irrespective of whether this was a consideration, we are without authority to interfere with the trustee's function under the circumstances of this case.

The decree of the lower court is reversed with directions to dismiss the complaint.