[No. 2204-1.   Division One.   January 20, 1975.]

RONALD BALDUS et al., *Respondents*, v. BANK OF CALIFORNIA, *Appellant.*

*Bogle, Gates, Dobrin, Wakefield & Long, Paul W. Steere, Ronald T. Schaps,* and *Michael W. Dundy,* for appellant.

*Trethewey & Brink, Joseph H. Trethewey,* and *John D. Wilson, Jr.,* for respondents.

SWANSON, C.J.—This case involves a claim of breach of trust based on the trustee's failure to diversify trust assets.

The Bank of California, a national association ("Bank"), trustee of Raymond Krueger's testamentary trust, appeals from a judgment which awarded to the remainderman beneficiaries, Ronald and Bruce Baldus,[1] $108,159 for damages which the trial court concluded "they incurred as a result

---

[1]This lawsuit was commenced on May 24, 1971, by the life beneficiary of the trust, Thelma Anita Krueger, widow of the deceased. Following Mrs. Krueger's death on March 22, 1972, the parties stipulated that the respondents Ronald and Bruce Baldus, as remainderman beneficiaries and sons of Mrs. Krueger by a previous marriage, and Bruce Baldus, as executor of his mother's estate, would be substituted for their mother as parties plaintiff.

of the bank's failure to diversify 80% of the National Lead stock within one year after receipt of the original trust assets." Conclusion of law No. 9, in part.

The will of Raymond Krueger, who died in September 1951, created a testamentary trust to pay his wife Thelma Anita Krueger an income for life and to provide for the educational expenses of his stepsons Ronald and Bruce Baldus, with the residue to go to the stepsons upon Mrs. Krueger's death. The Bank accepted its appointment as trustee and in 1954-55 received from the executor of the Krueger estate 2,871 shares of National Lead Company common stock.[2] When the National Lead stock was received, it constituted 99 percent of the corpus of the trust, the remainder being cash. Except for the sale of 200 shares of National Lead stock in 1955 for reinvestment and some subsequent sales, involving an invasion of principal agreed to by the beneficiaries in order to make cash distributions to Mrs. Krueger, the Bank did not diversify the assets.[3] Further, the court found that such sales did not at any time from March 1954 to January 5, 1971, reduce the concentration of National Lead stock held in the trust below 81 percent of the total asset value of the trust estate; however, Raymond Krueger who was a long-time employee of National Lead Company, included as paragraph IV(b) of his will creating the trust the following provision:

The trustee is authorized to secure any securities or investments or other property received from my estate in the same form of investment even though it is not such

[2]The trial court found that on August 19, 1954, the Bank received 1,299 shares of National Lead stock with a market value of $53.124 per share, and on January 11, 1955, the Bank received an additional 1,572 shares of National Lead stock with a market value of $59.90 per share, such that the total market value of all of the stock received was $162,543; however, the stock was entered on the Bank's books at a value of $89,577.64 which was the tax basis as of the date of Raymond Krueger's death.

[3]The trial court's findings and the record indicate that during the life of the trust, which had an initial market value of $162,543, the Bank made payments totaling $218,617.60 to Mrs. Krueger, and also paid $7,844 in federal income tax and $16,798 in trustee's fees.

as a trustee might originally purchase with trust funds until such time as the trustee deems it for the best interest of the trust estate to sell or convert the same. In this respect should the assets of my estate be so invested as to have a disproportionate, from a trust standpoint, share of the estate invested in stock of the National Lead Company, it is nevertheless my desire that the trustee retain said stock if in the trustee's judgment it is desirable or to dispose of it as the trustee deems expedient and to the best interest of the estate. There shall be no criticism or complaint of trustee's action in retaining said stock should it deem it advisable.

After consistently maintaining a price per share higher than it was when received, the National Lead stock deteriorated substantially in value during the summer of 1969. In the fall of 1970, after the company announced a reduction of its dividend, the Bank decided to sell the stock. On January 5, 1971, the Bank sold all of the National Lead stock then remaining in the Krueger trust for $54,939 which represented a price of $18 per share, reflecting a 1969 two-for-one stock split.[4]

On May 24, 1971, Mrs. Krueger filed her complaint against the Bank, essentially alleging that the Bank's retention of a high concentration of National Lead stock constituted a breach of trust resulting in a substantial loss of value in the trust assets. The Bank denied any mismanagement and claimed that the provisions of Raymond Krueger's will creating the trust, including the previously quoted paragraph IV (b), authorized the Bank as trustee, in its discretion, to retain a disproportionate amount of National Lead stock.

In August 1972, the trust was terminated and distribution of the residue made to Ronald and Bruce Baldus, each

---

[4]Undisputed evidence establishes that the price per share of the National Lead stock never fell below the tax cost of the stock, so that the 1971 sale produced a capital gain. Such evidence also indicates that until 1970, when the stock became depressed, its market value never fell below the market value of the stock when it was received by the Bank in 1954-55.

receiving $21,881.32 and 200 shares of Public Service Electric & Gas Company stock.

The trial court sitting with a jury, which the court subsequent to the return of the verdict treated as advisory only,[5] included in its findings of fact and conclusions of law the following:

> If 80% or 2297 shares of National Lead stock had been sold within the first year, and the proceeds reinvested in diversified holdings, the trust fund would have generated sufficient income to make the required income payments to the life beneficiary, provide for education expenses and, after the death of the life beneficiary, the trust fund would have available for distribution to the residuary beneficiaries a residue in the amount of approximately $163,000.

Finding of fact No. 22.

> Neither paragraphs IV(b) and IV(c), nor any other provision of the Raymond C. Krueger Will, nor the opinion letter from the bank's counsel dated October 24, 1957, relieved the Bank of California from liability for failure to diversify the assets in the Krueger trust within the first year of the trust.

Conclusion of law No. 8.

> The exercise of prudent trust administration, required by statute as well as the common law, imposed upon the Bank of California a duty to the life beneficiary and the residuary beneficiaries of the Krueger trust to conserve the assets and minimize the risk of loss to the trust fund by selling 80% of the National Lead stock and investing the proceeds in more diversified holdings within one year after the Bank of California received the National Lead stock.

---

[5]The case was tried and submitted to a jury with instructions on all issues; however, after a verdict was returned awarding $128,000 in damages, the trial court concluded: "Plaintiffs did not have a right to trial by jury because this cause of action is primarily in equity. Pursuant to Civil Rule 39(c), the Court concluded that this matter should have been tried with an advisory jury. The Court adopts the advisory jury's verdict that the defendant was not prudent in failing to diversify the Krueger trust within the designated time. The Court rejects the advisory jury's determination of damages." Conclusion of law No. 2.

Conclusion of law No. 6, in part. The court also determined that the remainderman beneficiaries Ronald and Bruce Baldus incurred $108,159 in damages because of the Bank's failure to diversify, and entered judgment in that amount.[6]

The appellant Bank makes 28 separate assignments of error directed primarily to the trial court's findings of fact and conclusions of law, all of which challenge two basic premises underlying the trial court's ruling: (1) the trustee had a mandatory duty as a matter of law to diversify the assets of the Krueger trust within 1 year; and, (2) the language of the will creating the trust did not relieve the trustee from that duty.[7] While there is substantial author-

---

[6]The trial court arrived at its award of damages "[b]y subtracting the amount of capital gains taxes [$7,844] paid by the trustee, and the proceeds realized from the January 5, 1971 sale of National Lead stock [$54,939] from the value of the National Lead stock initially received by the trustee [$162,543], and adding one-half of the trustee's fees to that amount [$8,399], the Court determines that the Bank of California is liable to the plaintiffs for damages in the amount of $108,399 [sic]." Conclusion of law No. 9, in part.

[7]The trial judge articulated his rationale as follows in his oral decision: "[I]n my opinion it was the duty of the trustee to follow the prudent man investment statute and in so doing it was their duty to minimize the risk of loss by investing the proceeds in a prudent manner in accordance with the regulations set down in the state statutes on the prudent investment rule. . . . [O]rdinarily, as the defense would agree, it is the duty of the trustee to diversify investments, eighty or ninety percent, without permitting, that is, one stock to amount to the value of more than say twenty percent of the entire investment. That is the general rule. And because of the, you might say the affection of the testator for the National Lead stock, because he had been an employee and manager of the local office for many years, that if the trustee felt that it was prudent to retain more than twenty percent and still not diminish the assets—I mean, if they could maintain in the trust more than twenty percent assets in the National Lead stock and still not diminish, they were permitted to do so. However, they had a duty beyond that to conduct the trust in such a manner that they would not diminish the assets and as it developed apparently they did diminish the assets retaining a substantial amount of National Lead stock in the trust. The evidence disclosed that there is no question about it that if they had invested a substantial, from eighty to ninety percent of the assets in trust fund B they would have not diminished the assets of the estate. MR. STEERE: What if they invest in another stock and had not done as well; is the Court saying it is a duty—THE

ity for the position taken by the trial court that a trustee, as a prudent man, has a duty to diversify trust investments, courts also have taken the view that although a lack of diversification in trust investments may be evidence that a trustee has failed to exercise proper skill and prudence, there is no mandatory duty imposed on a trustee to diversify. Thus, it is stated in 54 Am. Jur. *Trusts* § 417, at 331 (1945):

> In the absence of any statutory provision regulating the proportions of a trust estate that can be placed in certain investments, the cases involving the duty of trustees to diversify investments appear, at first impression at least, to be in some conflict, and many approach the question differently, although the actual results reached do not differ greatly. There is little, if any, authority which holds that there is an absolute duty to diversify trust investments under all circumstances.

(Footnotes omitted.) It is stated in 90 C.J.S. *Trusts* § 324, at 513-14 (1955):

> According to some authorities, a trustee is required to diversify his investments; he should not invest more than a reasonable proportion of the estate in a single security or type of security so as to minimize the risk of a large loss. This rule has been held to be particularly applicable where the trustee invests in corporate stocks and bonds. On the other hand, there is authority that trust investments, otherwise proper, are not improvident for lack of diversification, although failure to diversify is a factor to be considered in determining if the trustee acted with due skill, prudence, and caution.

(Footnotes omitted.) *See generally* Annot., 24 A.L.R.3d 730 (1969), and cases collected therein at pages 737 and 754.

---

COURT: What I am getting at is that they are admonished by the established rules in trust law, under common law as well, the statutes —well, the common law at least, that they are admonished that the best way to diminish the risk of loss is to reinvest. That is the prudent rule. And I suppose that if they had have put it into some other stock and the stock market went down and they couldn't help it, maybe they wouldn't have been violating this and I couldn't say that they would be violating it but there are two factors here that are clear. One is that they did not diversify. Two is that if they did diversify the assets wouldn't have been diminished. Those two factors are clear."

■ Appellant contends, however, that it is almost uniformly recognized that any duty to diversify may be modified by the terms of the instrument creating the trust and urges that the language of the trust instrument here in question fully supports its actions in administering the Krueger trust.⁸ We agree. The rule is succinctly stated in Restatement (Second) of Trusts § 228 (1959) in the following language at page 541:

> *Except as otherwise provided by the terms of the trust,* the trustee is under a duty to the beneficiary to distribute the risk of loss by a reasonable diversification of investments, unless under the circumstances it is prudent not to do so.

(Italics ours.) In this connection, both appellant and respondent recognize that Washington recognizes the "prudent investor" rule, as codified in RCW 30.24.020.⁹ *See In re*

_____

⁸Appellant also contends that even in the absence of any authorization in the trust instrument, a trustee is not required to diversify assets originally received as part of the trust estate, as distinguished from those subsequently acquired. *See* RCW 30.24.060; 3 A. Scott, *Trusts* § 228 (3d ed. 1967); Restatement (Second) of Trusts § 230 (1959). Further, appellant contends that it is fully protected in its decision to retain the National Lead stock by its reliance upon advice of counsel pursuant to the exculpatory provisions of paragraph IV(k) of the trust instrument providing that the trustee could seek such advice and be "fully protected in acting upon and following such advice . . ." In view of our disposition of this appeal, we do not reach the merits of these contentions.

⁹RCW 30.24.020 provides:

"In acquiring, investing, reinvesting, exchanging, selling and managing property for the benefit of another, a fiduciary shall exercise the judgment and care under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital. Within the limitations of the foregoing standard, and subject to any express provisions or limitations contained in any particular trust instrument, a fiduciary is authorized to acquire and retain every kind of property, real, personal or mixed, and every kind of investment specifically including but not by way of limitation, debentures and other corporate obligations, and stocks, preferred or common, which men of prudence, discretion and intelligence acquire for their own account."

*Parks' Trust,* 39 Wn.2d 763, 238 P.2d 1205 (1951); *Monroe v. Winn,* 16 Wn.2d 497, 133 P.2d 952 (1943). Significantly, the statute itself recognizes that "prudent investor" standard is "subject to any express provisions or limitations contained in any particular trust instrument, . . ." RCW 30.24.020, and, in addition, RCW 30.24.070[10] specifically indicates that the terms of the trust instrument are controlling of investments by a trustee. In other words, a trustor can authorize the trustee not to diversify. The rule is stated as follows in 3 A. Scott, *Trusts* § 228, at 1859 (3d ed. 1967):

> By the terms of the trust it may be provided that the trustee shall be permitted to invest a larger proportion of the estate in a single security than would otherwise be proper, or to retain securities which were part of the trust estate at the time of its creation even though they constitute a larger proportion of the estate than would otherwise be proper.

(Footnote omitted.) Section 230.1 of the same authority states at page 1868:

> By the terms of the trust the trustee may be directed or permitted to retain securities which it would otherwise be his duty to dispose of as not being proper trust investments. . . . Where he is authorized but not directed to retain the securities, it is within his discretion either to retain them or to dispose of them. In neither event will he incur any liability unless he is guilty of an abuse of discretion.

(Footnote omitted.) *See also* Restatement (Second) of Trusts §§ 228, comment *f,* and 230, comments *f, g,* and *j* (1959). In section 230, comment *j,* in part, it is stated at page 548:

---

[10]RCW 30.24.070 provides:

"Any fiduciary may invest funds held in trust under an instrument creating such trust, in any manner and/or in any investment and/or in any class of investments authorized by such instrument, whether or not the same is otherwise qualified for the investment of trust funds. The terms 'legal investment' or 'authorized investment' or words of similar import, as used in any such instrument, shall be taken to mean any investment which is permitted by the terms of RCW 30.24.020."

It is a question of interpretation whether an authorization to retain trust property included in the trust at the time of its creation dispenses with the requirement of diversification. The authorization may be interpreted as permitting the retention of investments without regard to the ordinary requirement of diversification, or it may be interpreted as permitting such retention only if the ordinary requirement of diversification is complied with.

Among the factors which may be of importance in determining whether and to what extent the requirement of diversification is dispensed with are: (1) whether the settlor has directed, recommended or merely authorized the retention of investments; (2) whether an authorization to retain is applicable generally to property included in the trust at the time of its creation, or is applicable to specific securities or types of securities; (3) the character of the trust property and the purposes of the trust.

Respondents contend, however, that the trust instrument here in question does not expressly relieve the Bank of the duty to diversify which respondents contend is otherwise required by RCW 30.24.020.[11] For convenience in reference, we again set forth paragraph IV(b) of the will of Raymond Krueger:

The trustee is authorized to secure any securities or investments or other property received from my estate in the same form of investment even though it is not such as a trustee might originally purchase with trust funds until such time as the trustee deems it for the best interest of the trust estate to sell or convert the same. In this respect should the assets of my estate be so invested as to have a disproportionate, from a trust standpoint, share of the estate invested in stock of the National Lead Company, it is nevertheless my desire that the trustee retain said stock if in the trustee's judgment it is desirable or to dispose of it as the trustee deems expedient and to the best interest of the estate. There shall be no criticism or complaint of trustee's action in retaining said stock should it deem it advisable.

---

[11] In view of our interpretation of the trust instrument in question, we express no opinion as to the validity of respondents' contention that, in the absence of a controlling trust provision, RCW 30.24.020 makes diversification mandatory.

A careful reading of paragraph IV(b) discloses no ambiguity. The provision clearly authorizes the trustee to retain in trust a disproportionate share of the National Lead stock. Indeed, the language of the provision expressly states that it was the trustor's desire that the trustee retain the stock, and thus the authorization in the trust instrument amounts to more than a simple grant of permission to retain such stock. Thus, the decision to retain or dispose of the stock was left in the free discretion of the trustee; the language, "retain . . . if in the trustee's judgment it is desirable or to dispose of it as the trustee deems expedient . . ." amounts to a directive rather than a mere authorization.

In addition, as the previously quoted comment *j* of Restatement (Second) of Trusts § 230 (1959) indicates, it is significant that the authorization of retention applies to a specific asset, the National Lead Company stock, which is referred to by name. If there be any doubt remaining that the trustee, if not directed, is authorized to retain the National Lead stock in the exercise of its discretion, we emphasize the last sentence of paragraph IV(b) which states: "There shall be no criticism or complaint of trustee's action in retaining said stock should it deem it advisable." Moreover, in paragraph IV(c), the trustor states in part: "My said trustee shall have the absolute management and control of the trust estate . . ." Similarly, paragraph IV(k) provides in part: "So long as the trustee shall have used good faith in the exercise of its duties hereunder, it shall not be liable for loss sustained by reason of matters beyond its control and the exercise by it of any judgment or discretion hereunder." Finally, the trial court found as a fact that "The trustee had absolute discretion to manage and administer the trust upon receipt of the assets." Finding of fact. No. 9, in part.

Therefore, it is apparent that the Bank as trustee had the discretion, under the express provisions of the trust, to retain or sell the National Lead stock and consequently no liability may be attached to the Bank in the absence of a

showing that it abused its discretion. *See Occidental Life Ins. Co. v. Blume*, 65 Wn.2d 643, 399 P.2d 76 (1965); *Rowe v. Rowe*, 219 Ore. 599, 347 P.2d 968 (1959); *In re Estate of Charter*, 46 Cal. 2d 227, 293 P.2d 778 (1956); *Warmack v. Crawford*, 239 Mo. App. 709, 195 S.W.2d 919 (1946). In this connection, Restatement (Second) of Trusts § 187 (1959) and comments thereto are instructive. Section 187 provides:

> Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion.

Comment *d* states:

> In determining the question whether the trustee is guilty of an abuse of discretion in exercising or failing to exercise a power, the following circumstances may be relevant: (1) the extent of the discretion conferred upon the trustee by the terms of the trust; (2) the purposes of the trust; (3) the nature of the power; (4) the existence or non-existence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged; (5) the motives of the trustee in exercising or refraining from exercising the power; (6) the existence or nonexistence of an interest in the trustee conflicting with that of the beneficiaries.

Comment *e* states in part:

> If discretion is conferred upon the trustee in the exercise of a power, the court will not interfere unless the trustee in exercising or failing to exercise the power acts dishonestly, or with an improper even though not a dishonest motive, or fails to use his judgment, or acts beyond the bounds of a reasonable judgment. The mere fact that if the discretion had been conferred upon the court, the court would have exercised the power differently, is not a sufficient reason for interfering with the exercise of the power by the trustee.

Comment *j* states in part:

> The extent of the discretion conferred upon the trustee depends primarily upon the manifestation of intention of

the settlor. The language of the settlor is construed so as to effectuate the purposes of the trust. The mere fact that the trustee is given discretion does not authorize him to act beyond the bounds of a reasonable judgment. The settlor may, however, manifest an intention that the trustee's judgment need not be exercised reasonably, even where there is a standard by which the reasonableness of the trustee's conduct can be judged. This may be indicated by a provision in the trust instrument that the trustee shall have "absolute" or "unlimited" or "uncontrolled" discretion. These words are not interpreted literally but are ordinarily construed as merely dispensing with the standard of reasonableness.

Having determined that liability may be imposed upon the Bank in the case at bar only if it can be concluded that the Bank abused its discretion or failed to exercise reasonable judgment, we look in vain for findings of fact by the trial court which would support such a conclusion. At the outset, we observe that the trial court made no finding of bad faith on the part of the Bank, and, indeed, affirmatively found:

> This case does not involve, and the evidence does not establish, fraud, gross negligence, or self-dealing on the part of the bank.

Finding of fact No. 16. In addition, we note that the trial court found that the Bank made cash distributions to Thelma Anita Krueger between March 1955, until her death on March 22, 1972, totaling $218,617.60 from the trust estate which was valued at $162,543 at the time it was received by the Bank in 1954-55. In addition, the Bank paid itself $16,798 in trustee's fees, and paid $7,844 in federal income taxes. After such disbursements and the sale of the National Lead stock on January 5, 1971, the Bank distributed to each of the remaindermen in August 1972, the sum of $21,881.32 and 200 shares of Public Service Electric & Gas Company stock.

Although the court found that if the trustee had diversified the trust assets within the first year by selling 80 percent of the National Lead stock and reinvested the

proceeds in diversified holdings there would have been $163,000 remaining for distribution to the remaindermen, such a finding necessarily based upon hindsight does not without more, rise to establish an abuse of discretion. As the court observed in *In re Estate of Pate,* 84 N.Y.S.2d 853, 858 (N.Y. Sur. Ct. 1948):

> What is more, the trustee's conduct is not to be judged from the vantage point of hindsight; instead, it must be considered prospectively—the flashback method must be employed, unaided or enlightened by subsequent events.

(Citations omitted.)

Other findings of the trial court are likewise inadequate to establish that the Bank abused its discretion in its administration of the Krueger trust. Finding of fact No. 23 states that a trust officer by memorandum stated that he informed the life beneficiary that retention of National Lead stock was not a good trust practice and that the Bank was compelled to diversify, but this finding is nothing more than a recital of evidence. The court found in finding of fact No. 24 that employees in the Bank's trust investment department recommended specific sales of National Lead stock which were rejected by the trust investment committees, but such a factual determination does not support a conclusion of abuse of discretion. Similarly, findings of fact Nos. 28 and 29 describe the Bank's investment facilities and the procedures utilized, but fail to state any facts which would support a conclusion that the Bank abused the discretion given it by the trust instrument. The findings do not indicate that the Bank unreasonably disregarded recommendations to sell, or that prudence required a sale of National Lead stock. To the contrary, finding of fact No. 17 states:

> During the period of the administration of the trust until the final sale of the National Lead stock, the bank considered National Lead stock to be a security of trust investment quality, although its capital appreciation over the term of the trust was less than the major market indices.

In short, the trial court's findings fail to indicate an abuse of discretion on the part of the Bank, and therefore there is no support for such a conclusion. Under such circumstances, the trial court's judgment cannot be sustained.

Respondents place particular reliance upon *Steiner v. Hawaiian Trust Co.*, 47 Hawaii 548, 393 P.2d 96 (1964), where a trustee was held liable for the loss sustained by retaining beyond a reasonable time stock of the Hawaiian Pineapple Company which comprised the bulk of the trust estate there in question. The court recognized that a trustee may be absolved from his specific duty to diversify by an express direction in the trust instrument, but held language in the Steiner trust instrument, to the effect that the trust estate should not be reinvested or varied by the trustee without the trustor's written consent, was not a mandate or authorization to retain trust assets but, rather, a provision to curb the trustee's power of reinvestment which was inserted for the benefit of the beneficiaries rather than for the settlor. As a result the court determined that when the investment portfolio became overly concentrated in the stock of one company, the trustee had a duty to consult with the settlor within a reasonable time regarding a change in the trust investment through diversification and to apply to the court for instructions. The requirement of the trustor's consent before the trustee could sell any asset —requiring exercise of the *trustor's* discretion—which was involved in *Steiner*, is clearly distinguishable from the directive in the Krueger trust instrument to retain or sell in the *trustee's* discretion. *Steiner* is inapposite.

To recapitulate, inasmuch as the Bank was directed or, at least, authorized to retain the National Lead stock, it had a duty to sell or diversify such assets only if it was reasonably prudent to do so in the exercise of its discretion. Under such circumstances, in the absence of any finding that the trustee's failure to diversify was imprudent, the mere fact that the general rule may require diversification is insufficient to support a conclusion that the Bank abused its dis-

cretion. Therefore, we hold, based upon the authorities discussed herein, that there is no proper basis in law for imposing liability upon the Bank.

The judgment of the trial court is reversed, and the cause is dismissed.

WILLIAMS and CALLOW, JJ., concur.

Petition for rehearing denied May 14, 1975.

Review denied by Supreme Court June 24, 1975.