58 Wn.2d 627 (1961)
364 P.2d 436
PEOPLES NATIONAL BANK OF WASHINGTON IN SEATTLE, Respondent,
v.
ETHEL MILLER JARVIS et al., Respondents,
EMIL PETER JARVIS et al., Appellants,
MURIEL JARVIS BARKER, Defendant.[*]
No. 35673.
The Supreme Court of Washington, Department One.
August 31, 1961.
Elvidge, Watt, Veblen & Tewell, for appellants.
Macbride, Matthews & Hanify, Helsell, Paul, Fetterman, Todd & Hokanson, and Joachim L. Girard, for respondents.
WEAVER, J.
Plaintiff, Peoples National Bank of Washington in Seattle, as trustee of an inter vivos trust, commenced this action for a declaratory judgment authorizing it to pay
"... the various medical bills incurred by the primary beneficiary, Ethel Miller Jarvis, since September 14, 1959, together with other medical expenses, nursing care and maintenance arising in the future out of her recent illness, and including cost of nursing service and a housekeeper, in a reasonable amount, all out of either income or, if necessary, the principal of the trust."
Parties defendant are: (a) Ethel Miller Jarvis, the trustor and principal income beneficiary; (b) Emil Peter Jarvis, her divorced husband and contingent income beneficiary; and (c) the remaindermen, their three children, Muriel Jarvis Barker (who made no appearance), Rodney Miller Jarvis (who joined his father in an answer and affirmative defense), and Sherry Jarvis Johnson (who joined her mother's motion to strike the affirmative defense).
May 31, 1949, Ethel Miller Jarvis established the trust in question by transferring to the trustee assets valued at $30,000. The trust was established a month prior to the divorce of Ethel Miller Jarvis and Emil Peter Jarvis. It is not necessary to expand the factual background of the trust except to point out that the trust agreement provides that
"Trustor's primary purpose in creating this Trust is to provide a flexible plan for the financial security of the following `income beneficiary', namely: Ethel Miller Jarvis."
*629 The assets of the trust are now worth approximately $80,000.
The complaint alleges and the answer of Emil and Rodney Jarvis admits that Mrs. Jarvis suffered a stroke September 14, 1959; has incurred various substantial medical care expenses; and, by reason of the nature of her illness, will necessarily incur further similar expenses. The answer also admits that
"Emil P. Jarvis has stated that if such payment be made he would take legal steps to make trustee personally liable therefor."
Defendants Emil and Rodney Jarvis, to whom we will refer as the sole defendants and appellants, appeal from an order (a) striking their affirmative defense; (b) granting summary judgment declaring that plaintiff trustee
"... has the discretionary power to make payments out of principal for the reasonable care and maintenance, medical, hospital, nursing and housekeeping services, or other similar expenses or reimbursements therefor; incurred or to be incurred in the future by Ethel Miller Jarvis."
and (c) allowing $500 in fees to plaintiff's counsel and $750 in fees to counsel for Ethel Miller Jarvis and Sherry Jarvis Johnson.
The defendants appealing from the order make three assignments of error  to striking their affirmative defense, or ordering summary judgment, and to allowing counsel fees for Ethel Miller Jarvis and Sherry Jarvis Johnson. The first two assignments of error we consider together.
The trust agreement, inter alia, provides:
"Whenever the Trustee shall find it necessary or expedient for the preservation of the Trust Estate or for the welfare of any beneficiary to exercise any discretionary power granted it by any clause of this Instrument of Trust, it is authorized and requested to keep in mind such information as may be known to it regarding other estate or provision available for any or all of the beneficiaries of this trust, the condition of health and the accustomed standard of living of the beneficiaries, the size and character of the trust estate, and such other matters as the Trustees may deem to be relevant.
*630 "...
"Unless specifically limited, all discretions conferred upon the Trustee by this Instrument of Trust and any of its schedules or exhibits shall be absolute, and their exercise by it shall be conclusive and binding upon all persons.
"...
"The primary purpose and interest in creating this trust is to provide a flexible plan for the financial security of the income beneficiary hereinbefore mentioned.
"...
"The Trustee shall have the power to pay to Ethel Miller Jarvis or to apply for her benefit, either before or after the death of Emil Peter Jarvis, such portions of the principal of the trust estate as to it shall seem fitting and proper for her support and maintenance...."
In the exercise of the discretion vested in it by the trust instrument, the trustee has concluded that certain bills incurred in the "reasonable care and maintenance, medical, hospital, nursing and housekeeping services" for the income beneficiary should be paid out of trust funds. The record supports the trial court's conclusion that, should the trustee exercise its discretion to make payments thereof out of principal, "there are no facts, allegations, or implications contained in any part of the file herein which would indicate an abuse of discretion."
Counsel for defendants admitted that the court "can find that there is a power to invade [principal]." The crux, however, of their affirmative defense is that "there is no necessity for invading the corpus [of the trust assets] at this time." (Italics ours.) They claim that, for her own benefit physically and for her peace of mind, the income beneficiary "should be living in a rest home or place where she could have much more adequate care and attention at much lesser cost...."
[1] In short, defendants would have the court substitute their discretion for that of the trustee. This the court cannot do in the absence of an abuse of discretion, for, where discretion is conferred upon a trustee, the exercise thereof is not subject to control by the court except to prevent an abuse of such discretion. Monroe v. Winn, 16 Wn. (2d) 497, 508, 133 P. (2d) 952 (1943).
*631 In the absence of an abuse of discretion, it was not error to strike defendants' affirmative defense. There remains no dispute of a material fact; hence, it was not error to dispose of this litigation under Rule of Pleading, Practice and Procedure 56, RCW, Vol. 0, by summary judgment.
Defendants-appellants contend that attorneys' fees incurred in this litigation by the primary income beneficiary may not be allowed and paid out of the trust corpus unless her participation in the litigation confers a benefit upon the trust as a whole, either by preserving it from dissipation or by increasing its corpus. In seeking to apply this principle to the instant case, appellants urge that the legal services rendered in behalf of Ethel Miller Jarvis were devoted solely to her claim that certain bills, incurred for her support and maintenance, should be paid out of the corpus of the trust; appellants urge that legal services were not devoted to the protection of the trust for the benefit of all the beneficiaries.
In view of appellants' claim that the trustee would be personally liable should it pay the bills here involved, the trustee was in no position to continue its administration of the trust until its powers were judicially determined. Obviously, it was of benefit to all concerned that the trust be kept operational. The income beneficiary was a necessary party to this litigation. It is incidental, and not necessarily controlling, that her contention coincide with that of the plaintiff trustee. In general, if the litigation is indispensible to the proper administration of the trust, the cost thereof may be a proper charge against the trust estate.
Because of the varying factual situations that may be involved, it is difficult to express a "rule of thumb"  except in the broadest of terms  to guide a trial court in the allowance of attorneys' fees from the assets of a trust.[1]
We find an excellent statement of the rule applicable to the instant case in In re Atwood's Trust v. Holmes, 227 Minn. 495, 501, 35 N.W. (2d) 736, 9 A.L.R. (2d) 1126 (1949), as follows:
*632 "... The applicable rule may be thus summarized: In the sound and cautiously exercised discretion of the court, and not as a matter of right, attorneys' fees and other expenses reasonably and necessarily incurred by all necessary parties to litigation may be allowed and properly charged to the trust estate where such litigation, with respect to substantial and material issues, is necessary in order to resolve the meaning and legal effect of ambiguous language used by the settlor in the trust instrument, if an adjudication thereof is essential to a proper administration of the trust, and if, without unnecessary expense or delay, the litigation is conducted in good faith for the primary benefit of the trust as a whole...." (Italics ours.)
[2, 3] In the cautious exercise of this discretion, the court must determine that the litigation is indispensible to the proper administration of the trust; that the issues presented are neither immaterial nor trifling; that the conduct of the parties or counsel is not vexatious or litigious; and that there has been no unnecessary delay or expense. As the supreme court of Minnesota said, supra:
"It is the duty of courts in fixing reasonable attorneys' fees as a charge against the trust corpus to protect trust estates from `vicarious generosity.' ..."
We do not agree with appellants' contention that this court has announced two conflicting rules on the allowance of attorneys' fees in trust litigation: Chapin v. Collard, 29 Wn. (2d) 788, 189 P. (2d) 642 (1948) (in which attorneys' fees were denied a life tenant of a trust); Puget Sound Nat. Bank of Tacoma v. Easterday, 56 Wn. (2d) 937, 350 P. (2d) 444 (1960) (in which counsel fees were allowed from the trust corpus).
The Chapin case, supra, is distinguishable on either of two grounds. First, this court held that
"... neither respondent's accountant nor her attorney has rendered such service as would bring him within any rule permitting his fees to be charged against the trust estate...." (Italics ours.) (p. 797)
Second, on two occasions the court pointed out that
"... The remainderman is, after all, not a party to this proceeding, and, before a court starts reducing her *633 estate, she should have an opportunity to be heard...." (p. 797)
The rationale of the Easterday case, supra, is controlling. Therein, we approved the finding of the trial court that
"`... the estate is substantially benefited by the most able services of counsel for the Defendants ...'" (p. 951)
A benefit to the trust estate may result from litigation which is unquestionably necessary to a judicial determination of the meaning of ambiguous language in a trust instrument.
The record before us is devoid of any indication that the trial court abused its discretion when it allowed attorneys' fees to respondents; therefore, the allowance was not improper and unreasonable.
The judgment is affirmed.
FINLEY, C.J., HILL, ROSELLINI, and OTT, JJ., concur.
FOSTER, J. did not participate.
NOTES
[*] Reported in 364 P. (2d) 436.
[1] An extensive annotation upon this subject, by A.M. Swarthout, appears in 9 A.L.R. (2d) 1132-1283 (1950).