[No. 48215–2.   En Banc.   April 28, 1983.]

FREEMAN ALLARD, ET AL, *Appellants,* v. PACIFIC
NATIONAL BANK, *as Trustee, Respondent.*

*Oles, Morrison, Rinker, Stanislaw & Ashbaugh,* by *Stuart G. Oles, Arthur D. McGarry,* and *David H. Karlen,* for appellants.

*Short & Cressman,* by *John O. Burgess* and *Steven R. Hake,* for respondent.

*Kenneth O. Eikenberry, Attorney General,* and *Mary M. Tennyson, Assistant,* amici curiae.

DOLLIVER, J.—Plaintiffs Freeman Allard and Evelyn Orkney are beneficiaries of trusts established by their parents, J. T. and Georgiana Stone. Defendant Pacific National Bank (Pacific Bank) is the trustee of the Stone trusts. Plaintiffs appeal a King County Superior Court decision dismissing their action against Pacific Bank for breach of its fiduciary duties as trustee of the Stone trusts. Plaintiffs also appeal the decision of the court denying their demand for a jury trial, refusing to allow their expert testimony regarding ordinary standards of trust administration, and awarding attorney fees and costs to Pacific Bank.

We agree with the Superior Court that plaintiffs' claims

are primarily equitable in nature and we affirm its decision that plaintiffs have no right to jury trial. We conclude, however, that Pacific Bank breached its fiduciary duties regarding management of the Stone trusts. We also find the Superior Court incorrectly awarded attorney fees and costs to Pacific Bank. We need not and do not reach the issue of whether the trial court improperly excluded plaintiffs' expert witnesses on the issue of generally accepted trust practices.

J. T. and Georgiana Stone, both deceased, established trusts in their wills conveying their property upon their deaths to Pacific Bank to be held for their children and the issue of their children. The Stones' children, Evelyn Orkney and Freeman Allard, are life income beneficiaries of the Stone trusts. Upon the death of either life income beneficiary, the trustee is to pay the income from the trust to the issue of the deceased beneficiary. When all the children of the deceased beneficiary reach the age of 21 years, the trusts direct the trustee to distribute the trust corpus equally among the issue of that beneficiary.

In 1978 the sole asset of the Stone trusts was a fee interest in a quarter block located on the northwest corner of Third Avenue and Columbia Street in downtown Seattle. The trust provisions of the wills gave Pacific Bank "full power to . . . manage, improve, sell, lease, mortgage, pledge, encumber, and exchange the whole or any part of the assets of [the] trust estate" and required Pacific Bank to

> exercise the judgment and care under the circumstances then prevailing, which prudent men exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital.

The Third and Columbia property was subject to a 99–year lease, entered into by the Stones in 1952 with Seattle–First National Bank (Seafirst Bank). The lease contained no rental escalation provision and the rental rate was to

remain the same for the entire 99-year term of the lease. The right of first refusal to purchase the lessor's interest in the property was given to the lessee. The lease also contained several restrictive provisions. One paragraph required any repair, reconstruction, or replacement of buildings on the property by the lessee to be completed within 8 months from the date the original building was damaged or destroyed "from any cause whatsoever". Another paragraph provided that, upon termination of lease, the lessee had the option either to surrender possession of all improvements or to remove the improvements. The lease prohibited, without the lessor's consent, any encumbrance which would have priority over the lessor in case of the lessee's insolvency.

In June 1977 Seafirst Bank assigned its leasehold interest in the Third and Columbia property to the City Credit Union of Seattle (Credit Union). Eight months later, on February 14, 1978, Credit Union offered to purchase the property from Pacific Bank for $139,900. On April 25, 1978, Pacific Bank informed Credit Union it was interested in selling the property, but demanded at least $200,000. In early June 1978, Credit Union offered $200,000 for the Third and Columbia property. Pacific Bank accepted Credit Union's offer, and deeded the property to Credit Union on August 17, 1978. On September 26, 1978, Pacific Bank informed Freeman Allard and Evelyn Orkney of the sale to Credit Union.

On May 1, 1979, plaintiffs commenced the present action against Pacific Bank for breach of its fiduciary duties regarding management of the Stone trusts, against Credit Union and Seafirst Bank for participation in the alleged breach, and against Credit Union for conversion. Plaintiffs' complaint requested money damages from Pacific Bank, Credit Union, and Seafirst Bank. The complaint also requested the imposition of a constructive trust on the Third and Columbia property and the removal of Pacific Bank as trustee. On March 18, 1980, plaintiffs filed their demand for a trial by jury under Const. art. 1, § 21.

Based on its determination plaintiffs' cause of action was primarily equitable in nature, the trial court struck their demand for trial by jury. The trial court also granted motions by Credit Union and Seafirst Bank for a partial summary judgment dismissing them from the case. Plaintiffs did not appeal the summary judgments dismissing Credit Union and Seafirst Bank.

At trial, the primary dispute was over the degree of care owed by Pacific Bank to the Stone trusts and to the Stone trust beneficiaries. Plaintiffs attempted to call expert witnesses to testify Pacific Bank failed to comply with the ordinary standards of trust administration when it sold the Third and Columbia property. Plaintiffs' first expert witness, Edmond R. Davis, was former manager of the trust department legal division of Security First National Bank, now Security Pacific National Bank, in California. Plaintiffs presented an offer of proof Edmond Davis would testify Pacific Bank failed to comply with ordinary standards of trust practice in making its decision to sell the Third and Columbia property and in the steps it took to sell the property. Plaintiffs' other excluded expert witness, McLain Davis, was former manager of the trust department probate division of the National Bank of Commerce, now Rainier Bank. Plaintiffs' offers of proof regarding the testimony of McLain Davis indicated the witness would testify a bank trustee, acting in accordance with ordinary standards of trust practice, would not be excused from obtaining an appraisal by lack of funds in the trust account. Furthermore, according to plaintiffs, McLain Davis would have testified a trustee would not be acting in accordance with ordinary trust practices if the trustee dispensed with obtaining an outside appraisal or other prospective purchasers where its own internal appraisal indicated the sale was for an amount in excess of the property's fair market value.

At trial it was unquestioned that both witnesses were qualified as experts in trust administration. Rather, the trial court sustained defendant's objections to the testi-

mony of plaintiffs' expert witnesses on the grounds the witnesses would testify as to legal opinions, inadmissible under ER 702, 704. The exclusion of plaintiffs' proffered expert witnesses left plaintiffs with no direct testimony regarding ordinary standards of trust administration.

At the culmination of the trial, the court entered judgment dismissing plaintiffs' action against Pacific Bank. It determined Pacific Bank acted in good faith and in conformance with its duties under the Stone trust instruments. The court concluded Pacific Bank neither had a duty to inform the trust beneficiaries prior to sale of the Third and Columbia property nor a duty to obtain an independent appraisal of the property or to place the property on the open market. Finally, the trial court awarded Pacific Bank $51,507.07 attorney fees and costs from the income and principal of the Stone trusts. From this judgment plaintiffs bring appeal.

## I

At the outset, we consider plaintiffs' argument they were entitled to a jury trial under Const. art. 1, § 21. The Washington State Constitution, article 1, section 21 provides "[t]he right of trial by jury shall remain inviolate". This has been consistently interpreted as guaranteeing the right to trial by jury as it existed in the territory at the time of the adoption of the constitution. *E.g., Brown v. Safeway Stores, Inc.,* 94 Wn.2d 359, 365, 617 P.2d 704 (1980). In a civil action, a right to a jury trial exists where the action is purely legal in nature. *Brown,* 94 Wn.2d at 365; *Peters v. Dulien Steel Prods., Inc.,* 39 Wn.2d 889, 891, 239 P.2d 1055 (1952). Where the action is purely equitable in nature, however, there is no right to a trial by jury. *Brown,* 94 Wn.2d at 365. *See Dexter Horton Bldg. Co. v. King Cy.,* 10 Wn.2d 186, 116 P.2d 507 (1941).

The overall nature of a civil action is determined by considering all the issues raised by all the pleadings. *Brown,* 94 Wn.2d at 365; *Seattle v. Pacific States Lumber Co.,* 166 Wash. 517, 530, 7 P.2d 967 (1932). *See generally* Trautman,

*Right to Jury Trial in Washington—Present and Future,* 34 Wash. L. Rev. 401 (1959); *Constitutional Law—Civil Rules for Superior Courts—Right to Civil Jury Trial,* 6 Gonz. L. Rev. 111 (1970). In determining whether a case is primarily equitable or legal in nature, the trial court is accorded wide discretion, the exercise of which will not be disturbed except for clear abuse. *Brown,* 94 Wn.2d at 368; *Pollock v. Ralston,* 5 Wn.2d 36, 44, 104 P.2d 934 (1940). The trial court's discretion should be exercised with reference to a variety of factors, including:

> (1) who seeks the equitable relief; (2) is the person seeking the equitable relief also demanding trial of the issues to the jury; (3) are the main issues primarily legal or equitable in their nature; (4) do the equitable issues present complexities in the trial which will affect the orderly determination of such issues by a jury; (5) are the equitable and legal issues easily separable; (6) in the exercise of such discretion, great weight should be given to the constitutional right of trial by jury and if the nature of the action is doubtful, a jury trial should be allowed; (7) the trial court should go beyond the pleadings to ascertain the real issues in dispute before making the determination as to whether or not a jury trial should be granted on all or part of such issues.

*Scavenius v. Manchester Port Dist.,* 2 Wn. App. 126, 129–30, 467 P.2d 372 (1970) (quoted in *Brown,* 94 Wn.2d at 368).

██ The distinction between actions at law and those at equity is based on the nature rather than the form of the proceeding. *See Conaway v. Co–Operative Homebuilders,* 65 Wash. 39, 117 P. 716 (1911). Even if the action is one for money damages, it may be primarily equitable in nature. *Ranta v. German,* 1 Wn. App. 104, 459 P.2d 961 (1969). Where the beneficiaries seek recovery for themselves personally, the action is considered legal in nature. *Brys v. Pratt,* 55 Wash. 122, 104 P. 169 (1909). *Accord, Dixon v. Northwestern Nat'l Bank,* 297 F. Supp. 485 (D. Minn. 1969). Where, as in this case, the beneficiaries of a trust sue the trustee in order to restore funds to the trust, the action

is considered equitable in nature. *Baldus v. Bank of Cal.*, 12 Wn. App. 621, 530 P.2d 1350 (1975). *Spitznass v. First Nat'l Bank*, 269 Or. 676, 525 P.2d 1318 (1974).

The beneficiaries of the Stone trusts essentially allege Pacific Bank improperly depleted the trust assets by selling the Third and Columbia property for less than its fair market value. The trial court properly determined plaintiffs' action against Pacific Bank was equitable in nature. The denial of plaintiffs' demand for a jury trial was proper. None of the beneficiaries have a present right to receive distribution of the trust corpus. Their only remedy for depletion of the trust corpus is restoration of the value of the corpus by the trustee, often referred to as a "surcharge" on the trustee. *See, e.g., Lockwood v. OFB Corp.*, 305 A.2d 636, 638 (Del. Ch. 1973); 3 A. Scott, *Trusts* § 190.6 (3d ed. 1967). Since the trustee is under no duty to pay money besides the trust income to the beneficiaries, they have no action at law for breach of the trust agreement.

## II

We now consider the crux of the case before us. Defendant contends it had full authority under the trust instrument to exercise its own judgment and impartial discretion in deciding how to invest the trust assets and a duty to use reasonable care and skill to make the trust property productive. See findings of fact 12–14. It further contends the sale of the property was conducted in good faith and with honest judgment. Finding of fact 19. Plaintiffs assert this discretion was limited by its fiduciary duties and that defendant in its management of the trusts breached its fiduciary duty.

Plaintiffs' argument regarding Pacific Bank's alleged breach of its fiduciary duties is twofold. First, Pacific Bank had a duty to inform them of the sale of the Third and Columbia property. Second, Pacific Bank breached its fiduciary duties by failing either to obtain an independent appraisal of the Third and Columbia property or to place the property on the open market prior to selling it to Credit

Union. We agree with plaintiffs' position in both instances and hold defendant breached its fiduciary duty in its management of the trusts.

A

Initially, plaintiffs and amicus curiae the Attorney General of the State of Washington contend Pacific Bank should be held to a higher standard of care than the ordinary, prudent investor standard provided in RCW 30.24-.020. Plaintiffs and amicus curiae argue the ordinary, prudent investor standard is inappropriate where the trustee represents that it has greater skill than that of a non-professional trustee. They fail to mention, however, the terms of the Stone trust agreements which specifically adopt the prudent investor standard of care provided in RCW 30.24.020.

RCW 30.24.020 provides:

In acquiring, investing, reinvesting, exchanging, selling and managing property for the benefit of another, a fiduciary shall exercise the judgment and care *under the circumstances* then prevailing, which *men of prudence,* discretion and intelligence exercise *in the management of their own affairs,* not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital.

(Italics ours.) Under the trust agreements, Pacific Bank is required as trustee to

exercise the judgment and care under the circumstances then prevailing, which prudent men exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital.

Significantly, the statute recognizes the standard of care required of a trustee is "subject to any express provisions or limitations contained in any particular trust instrument". RCW 30.24.020. Furthermore, the terms of the trust instrument control as to the investments made by a trustee. RCW 30.24.070. Except where impossible, illegal,

or where a change of circumstances occurs which would impair the purposes of the trust, the nature and extent of the duties and powers of a trustee are determined by the trust agreement. *See Baldus v. Bank of Cal.,* 12 Wn. App. at 628; *Steiner v. Hawaiian Trust Co.,* 47 Hawaii 548, 562–63, 393 P.2d 96 (1964). Although in some future case we may be called upon to determine if a corporate professional trustee should be held to a higher standard because of the language in the trust instruments, this issue need not be decided here. *Cf.* Restatement (Second) of Trusts § 227, comment *d* (1959).

## B

The Stone trusts gave Pacific Bank "full power to . . . manage, improve, sell, lease, mortgage, pledge, encumber, and exchange the whole or any part of the assets of [the] trust estate". Under such an agreement, the trustee is not required to secure the consent of trust beneficiaries before selling trust assets. 3 A. Scott, *Trusts* § 190.5 (3d ed. 1967). *Accord, Bulla v. Valley Nat'l Bank,* 82 Ariz. 84, 308 P.2d 932 (1957); *In re Wellman Estate,* 119 Vt. 426, 127 A.2d 279 (1956). The trustee owes to the beneficiaries, however, the highest degree of good faith, care, loyalty, and integrity. *Esmieu v. Schrag,* 88 Wn.2d 490, 498, 563 P.2d 203 (1977); *Monroe v. Winn,* 16 Wn.2d 497, 508, 133 P.2d 952 (1943).

Pacific Bank claims it was obligated to sell the property to Credit Union since Credit Union, as assignee of the lease agreement with Seafirst Bank, had a right of first refusal to purchase the property. Since it did not need to obtain the consent of the beneficiaries before selling trust assets, Pacific Bank argues it also was not required to inform the beneficiaries of the sale. We disagree. The beneficiaries could have offered to purchase the property at a higher price than the offer by Credit Union, thereby forcing Credit Union to pay a higher price to exercise its right of first refusal as assignee of the lease agreement. Furthermore, letters from the beneficiaries to Pacific Bank indicated their desire to retain the Third and Columbia property. While the beneficiaries could not have prevented

Pacific Bank from selling the property, they presumably could have outbid Credit Union for the property. This opportunity should have been afforded to them.

On a previous occasion, we ruled the trustee's fiduciary duty includes the responsibility to inform the beneficiaries fully of all facts which would aid them in protecting their interests. *Esmieu v. Schrag, supra. See United States v. Bennett*, 57 F. Supp. 670 (E.D. Wash. 1944). We adhere to the view expressed in *Esmieu.* That the settlor has created a trust and thus required the beneficiaries to enjoy their property interests indirectly does not imply the beneficiaries are to be kept in ignorance of the trust, the nature of the trust property, and the details of its administration. G. Bogert, *Trusts and Trustees* § 961 (2d ed. 1962). If the beneficiaries are able to hold the trustee to proper standards of care and honesty and procure the benefits to which they are entitled, they must know of what the trust property consists and how it is being managed. G. Bogert, *Trusts and Trustees, supra.*

The duty to provide information is often performed by corporate trustees by rendering periodic statements to the beneficiaries, usually in the form of copies of the ledger sheets concerning the trust. G. Bogert, *Trusts* § 141 (5th ed. 1973). For example, such condensed explanations of recent transactions may be mailed to the beneficiaries annually, semiannually, or quarterly. G. Bogert, *Trusts, supra.* Ordinarily, periodic statements are sufficient to satisfy a trustee's duty to beneficiaries of transactions affecting the trust property. The trust provisions here, for example, provide the trustee

> shall furnish on or before February 15 of each year to each person described in Section 1 of Article IV who is then a beneficiary . . . a statement showing how the respective trust assets are invested and all transactions relating thereto for the preceding calendar year.

The trustee must inform beneficiaries, however, of all material facts in connection with a nonroutine transaction which significantly affects the trust estate and the interests

of the beneficiaries prior to the transaction taking place. The duty to inform is particularly required in this case where the only asset of the trusts was the property on the corner of Third and Columbia. Under the circumstances found in this case failure to inform was an egregious breach of fiduciary duty and defies the course of conduct any reasonable person would take, much less a prudent investor.

## C

We also conclude Pacific Bank breached its fiduciary duties regarding management of the Stone trusts by failing to obtain the best possible price for the Third and Columbia property. Pacific Bank made no attempt to obtain a more favorable price for the property from Credit Union by, for example, negotiating to cancel the restrictive provisions in the lease originally negotiated with Seafirst Bank. *Cf. Hatcher v. United States Nat'l Bank,* 56 Or. App. 643, 643 P.2d 359 (1982) (trustee had not fulfilled its fiduciary duties by merely examining offer to purchase and altering the terms slightly). The bank neither offered the property for sale on the open market, *see Rippey v. Denver United States Nat'l Bank,* 273 F. Supp. 718 (D. Colo. 1967), nor did it obtain an independent, outside appraisal of the Third and Columbia property to determine its fair market value. *See Belcher v. Birmingham Trust Nat'l Bank,* 348 F. Supp. 61 (N.D. Ala. 1968); *Webb & Knapp, Inc. v. Hanover Bank,* 214 Md. 230, 133 A.2d 450 (1957).

Washington courts have not yet considered the nature of a trustee's duty of care regarding the sale of trust assets. Other courts, however, generally require that a trustee when selling trust assets try to obtain the maximum price for the asset. *E.g., Berner v. Equitable Office Bldg. Corp.,* 175 F.2d 218, 221 (2d Cir. 1949); *Terry v. Midwest Ref. Co.,* 64 F.2d 428 (10th Cir.), *cert. denied,* 290 U.S. 660 (1933); *Lockwood v. OFB Corp.,* 305 A.2d 636, 638 (Del. Ch. 1973); *Ross v. Wilson,* 308 N.Y. 605, 127 N.E.2d 697 (1955). The Oregon Court of Appeals required a trustee to determine the fair market value of trust property prior to selling the

property by obtaining an appraisal or by "testing the market" to determine what a willing buyer would pay. *Hatcher v. United States Nat'l Bank*, 56 Or. App. at 652. Some courts specifically require trustees to obtain an independent appraisal of the property. *See, e.g., Belcher v. Birmingham Trust Nat'l Bank*, 348 F. Supp. 61 (N.D. Ala. 1968); *Webb & Knapp, Inc. v. Hanover Bank*, 214 Md. 230, 133 A.2d 450 (1957). Other courts merely require that a trustee determine fair market value by placing the property on the open market. *See, e.g., Lockwood v. OFB Corp., supra; State v. Hartman*, 54 Wis. 2d 47, 194 N.W.2d 653 (1972).

We agree with the Oregon Court of Appeals in *Hatcher* that a trustee may determine the best possible price for trust property either by obtaining an independent appraisal of the property or by "testing the market" to determine what a willing buyer would pay. The record discloses none of these actions were taken by the defendant. By its failure to obtain the best possible price for the Third and Columbia property, defendant breached its fiduciary duty as the prudent manager of the trusts.

On the issue of the exclusion by the trial court of the testimony regarding ordinary standards of trust administration, we need not express an opinion. The admission of such evidence is at the discretion of the trial court. *See Maehren v. Seattle*, 92 Wn.2d 480, 488, 599 P.2d 1255 (1979). Although arguably it was an abuse of discretion and the evidence might properly have been admitted, because of our disposition of the case it is unnecessary to reach that issue and we decline to do so.

### III

■ Finally, we consider whether the trial court improperly awarded attorney fees to Pacific Bank. A trial court may allow and properly charge attorney fees to a trust estate for litigation that is necessary to the administration of the trust. *Peoples Nat'l Bank v. Jarvis*, 58 Wn.2d 627, 632–33, 364 P.2d 436 (1961); *Puget Sound Nat'l Bank v. Easterday*, 56 Wn.2d 937, 951, 350 P.2d 444, 354 P.2d 24

(1960). The award of attorney fees against the trust estate is vested in the discretion of the trial court. *Jarvis,* 58 Wn.2d at 632; *Tucker v. Brown,* 20 Wn.2d 740, 839, 150 P.2d 604 (1944). A trial court's discretion to award attorney fees, however, is not absolute. The court must determine the litigation is indispensable to the proper administration of the trust; the issues presented are neither immaterial nor trifling; the conduct of the parties or counsel is not vexatious or litigious; and that there has been no unnecessary delay or expense. *Jarvis,* 58 Wn.2d at 632. Furthermore, the trial court must consider the result of the litigation. G. Bogert, *Trusts and Trustees* § 871 (2d rev. ed. 1982).

The court's underlying consideration must be whether the litigation and the participation of the party seeking attorney fees caused a benefit to the trust. *Estate of Baird,* 135 Cal. App. 2d 343, 287 P.2d 372 (1955); *Kronzer v. First Nat'l Bank,* 305 Minn. 415, 235 N.W.2d 187 (1975). A trustee who unsuccessfully defends against charges of breach of fiduciary duties obviously has not caused a benefit to the trust. Therefore, a trial court abuses its discretion when it awards attorney fees to a trustee for litigation caused by the trustee's misconduct. *Accord, Estate of Baird, supra; Ellis v. King,* 336 Ill. App. 298, 83 N.E.2d 367 (1949).

Here the trial court awarded attorney fees to Pacific Bank based on its decision Pacific Bank properly exercised its discretion in the management of the Stone trusts. Since we rule here that regardless of the discretion of the trustee it breached its fiduciary duties, the award of attorney fees was based on untenable grounds. We hold this was an abuse of discretion. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971). A trustee may be awarded attorney fees and costs for litigation alleging breach of the trust agreement only if the trustee successfully defends against the action. *See* Annot., 9 A.L.R.2d 1132, 1241–53 (1950).

■ We also hold that since defendant breached its fiduciary duty plaintiffs should be granted their request to recover all attorney fees expended at both the trial and on

appeal on behalf of the plaintiffs and all minor beneficiaries and unknown beneficiaries. *See PUD 1 v. Kottsick,* 86 Wn.2d 388, 545 P.2d 1 (1976). *See* Annot., 9 A.L.R.2d 1132, 1241–53 (1950). Ordinarily, the trust estate must bear the general costs of administration of the trust, including the expenses of necessary litigation. *Monroe v. Winn,* 19 Wn.2d 462, 466, 142 P.2d 1022 (1943). Where litigation is necessitated by the inexcusable conduct of the trustee, however, the trustee individually must pay those expenses. *Wolff v. Calla,* 288 F. Supp. 891, 894 (E.D. Pa. 1968); *Wilmington Trust Co. v. Coulter,* 42 Del. Ch. 253, 208 A.2d 677 (1965). *Accord, Hsu Ying Li v. Tang,* 87 Wn.2d 796, 557 P.2d 342 (1976). As we said in *Grein v. Cavano,* 61 Wn.2d 498, 506, 379 P.2d 209 (1963) (quoting *Weber v. Marine Cooks' & Stewards' Ass'n,* 93 Cal. App. 2d 327, 340–41, 208 P.2d 1009 (1949)), *quoted with approval in DeMonbrun v. Sheet Metal Workers Int'l Ass'n,* 140 Cal. App. 2d 546, 565, 295 P.2d 881 (1956):

> [T]he successful maintenance by a few for the benefit of many of an equitable action resulting in the protection of [their] contractual rights as originally established is ground for allowing attorney's fees to those who battle to redress the wrong and maintain the previous personal rights although no actual court order to return the erroneously spent funds has been made.

*Accord, Peoples Nat'l Bank v. Jarvis,* 58 Wn.2d 627, 632–33, 364 P.2d 436 (1961).

We affirm the trial court's refusal to grant plaintiffs a jury trial. We hold defendant breached its fiduciary duty and reverse the trial court on this issue. The award of attorney fees to Pacific Bank is reversed. The case is remanded for a determination of the damages caused to plaintiffs by defendant's breach of its fiduciary duties as trustee of the Stone trusts and a determination of the amount of attorney fees to be awarded plaintiffs from the trustee individually.

WILLIAMS, C.J., STAFFORD, DORE, DIMMICK, and PEARSON, JJ., and ALEXANDER and WIELAND, JJ. Pro Tem., concur.